USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/31/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARSILIO LANGELLA,

                             Plaintiff,

   -against-

MAHOPAC CENTRAL SCHOOL DISTRICT;
ANTHONY DICARLO, SUPERINTENDENT OF
SCHOOLS; DENNIS CREEDON, FORMER
SUPERINTENDENT OF SCHOOLS; JOHN AUGUSTA,
ATHLETIC DIRECTOR/FORMER INTERIM
PRINCIPAL; RONALD CLAMSER, FORMER HUMAN
RESOURCES DIRECTOR/ASSISTANT
SUPERINTENDENT; MICHAEL SCLAFANI,
FORMER BOARD PRESIDENT; BRIAN MAHONEY,
FORMER BOARD VICE PRESIDENT,

                             Defendants.

---

No. 18-cv-10023 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiff Marsilio Langella ("Plaintiff" or "Langella") brings this action against Defendants

Mahopac Central School District ("Mahopac" or the "District"), Anthony DiCarlo, Superintendent

of Schools for the District ("DiCarlo"), Dennis Creedon, Former Superintendent of Schools for the

District ("Creedon"), John Augusta, Former Athletic Director and Former Interim Principal of

Mahopac High School ("Augusta"), Ronald Clamser, Former Superintendent/Human Resources

Director for the District ("Clamser"), Michael Sclafani, Former Board President for the District

("Sclafani"), and Brian Mahoney, Former Board Vice President for the District ("Mahoney")

(collectively, "Defendants"). (Am. Compl. ("AC"), ECF No. 14.) Plaintiff asserts claims under the

Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, the Americans with

Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, Section 504 of the Rehabilitation Act of 1973

("RA"), 29 U.S.C. § 794, and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec.

Law § 290 *et seq.*, alleging discriminatory and retaliatory conduct stemming from his age and his

disability.  (*Id.*)  Plaintiff also asserts state common law claims of defamation and tortious interference with contract.  (*Id.*)

Presently before the Court is Defendants' motion to dismiss Plaintiff's Amended Complaint (the "AC").  (ECF No. 36.)  For the following reasons, Defendants' motion is GRANTED.

## BACKGROUND

The below facts are drawn from the AC and are assumed true for purposes of this motion.

### A.  Background on Langella

Langella is a 52-year old tenured chemistry teacher at Mahopac.  (AC ¶¶ 1, 15.)  He suffers from deafness in his right ear, as well as tinnitus, and has had these conditions since approximately 1994.  (*Id.* ¶ 16.)  Langella also has a history of hypertension and heart disease, and in 2011, he took medical leave for heart surgery.  (*Id.*)

Langella has been teaching at Mahopac High School since 2000 and has received many accolades for his work as a chemistry teacher.  (*Id.* ¶ 17.)  He is currently teaching at Mahopac but is subject to a Teacher Improvement Plan.  (*Id.*)  Under this plan, Langella must meet with the current school principal every two weeks.  (*Id.*)

In addition to his work as a chemistry teacher, Langella was an assistant varsity football coach from 2001 until 2014, and, as detailed below, he served as head varsity football coach in the fall of 2016.  (*Id.* ¶ 18.)  Langella received additional compensation for his coaching work.  (*Id.*)

### B.  Langella's Head Coach Application

Langella applied for the head varsity football coach position at Mahopac High School in January 2016.  (*Id.* ¶ 19.)  Thereafter, he was invited to two interviews for the position.  (*Id.* ¶ 20.)  During his first interview in early January 2016, Langella learned that Mahopac was soliciting coaching applications from outside of the District.  (*Id.*)  In fact, Langella was the only in-district employee applicant who had applied for the head coach position.  (*Id.*)  Langella alleges that, because

he was an active employee within Mahopac, he had contractual rights to the head coach position under the teachers' collective bargaining agreement.  (*Id.*)

The second interview took place on January 28, 2016.  (*Id.* ¶ 21.)  Both Creedon (then Superintendent) and Augusta were in attendance.  (*Id.*)  During the interview, Creedon asked Langella if he was close to retirement.  (*Id.*)  A month later, on February 22, 2016, Augusta informed Langella that he was "loud" during the second interview, which resulted in several members of the Mahopac School Board (the "Board") requesting a private meeting with him.  (*Id.* ¶ 22.)  Langella advised Augusta that he spoke at a higher volume because he has a hearing impairment.  (*Id.*)

The meeting with the Board members was held several days later, on March 8, 2016. (*Id.* ¶ 23.)  Creedon, Sclafani (then-Board President), and Mahoney (then-Board Vice President) were in attendance.  (*Id.*)  At the meeting, Sclafani asked Langella if he was close to retirement. (*Id.* ¶ 24.)  Sclafani then explained that Langella was part of the "old guard," which is why head coaching applications were being solicited from outside of the District.  (*Id.*)  Separately, Mahoney expressed his concern with Langella's loud voice, stating that it would be hard for the Mahopac community to listen to it.  (*Id.*)  Mahoney also worried about Langella's public speaking ability due to his loud voice.  (*Id.*)

Several days before the meeting, on or about March 2, 2016, the Mahopac teachers' union had filed a grievance because the District purportedly violated the collective bargaining agreement by considering applicants from outside of the District.  (*Id.* ¶ 25.)  That grievance was resolved on March 23, 2016.  (*Id.*)  Thereafter, Langella was appointed to the head coach position.  (*Id.*)

### C.  Langella's Tenure as Head Coach

Langella alleges that Defendants purportedly began a discriminatory and retaliatory campaign against him after he accepted the head coach position.  (*Id.* ¶ 26.)  For example, in April 2016, Augusta told Langella that the football team could not weight train on school grounds and

instead had to be bussed to a local gym.  (*Id.* ⁋ 27.)  This resulted in Langella having to organize daily transportation to an off-site gym.  (*Id.*)  A few months later, on June 24, 2016, Augusta claimed that Langella broke locks on lockers in the varsity athletic locker room.  (*Id.* ⁋ 28.)

On October 19, 2016, after the start of the 2016-17 school year, Augusta called Langella into his office and accused him of using foul language during football practice.  (*Id.* ⁋ 29.)  As a result, Augusta placed a letter of counseling in Langella's personnel file.  (*Id.*)  Augusta called Langella back to his office on November 1, 2016, this time accusing him of making threatening statements at a pregame speech before a football game.[1]  (*Id.* ⁋ 30.)

In January 2017, Langella started hearing rumors from other football coaches that he would be replaced.  (*Id.* ⁋ 31.)  Then, on April 5, 2017, the Board placed another physical education position into the budget.  (*Id.*)  Two days later, on April 7, 2017, Assistant Superintendent Clamser called Langella into his office and informed him that he would be receiving a second letter of counseling in his file because of (1) the lock cutting incident, (2) the threatening statements made during his pregame speech, (3) Plaintiff's use of foul language, and (4) his announcement of assistant coaches prior to the Board's approval.  (*Id.* ⁋ 32.)  Clamser also informed Langella that he would not be reappointed as head coach.  (*Id.*)  Nevertheless, on April 24, 2017, Langella officially applied to be head coach for the Fall 2017 season.  (*Id.* ⁋ 33.)  He never received an interview nor was his application ever acknowledged by the Board.  (*Id.*)

On June 23, 2017, the last day of school, Clamser gave Langella his second letter of counseling that was discussed during the April 7, 2017 meeting.  (*Id.* ⁋ 34.)  Langella's union threatened to file a grievance about the lock issue that was contained in the letter.  (*Id.*)  As a result, Clamser revised the letter to remove those specific claims.  (*Id.*)

---

[1]    In contrast, on November 24, 2016, Acting Athletic Director Ron Montalvo wrote a positive performance appraisal about Langella's football coaching duties.  (AC ⁋ 30.)

On or about June 26, 2017, the District hired Dominick DiMatteo to replace Langella as the head varsity football coach at Mahopac. (*Id.* ¶ 35.) DiMatteo was also given the physical education position created by Mahopac in April 2017. (*Id.*) DiMatteo is younger than Langella (45 years old) and does not suffer from any disability or handicap. (*Id.*; Pl. Opp. to Defs. Mot. to Dismiss ("Pl. Opp."), ECF No. 40, at 12.)

### D. Student Complaints Lodged Against Langella and Defendants' Disciplinary Actions

On October 27, 2017, Langella's home was egged and vandalized by four Mahopac students. (*Id.* ¶ 37.) Three of these students were members of the football team that Langella coached. (*Id.*) On November 7, 2017, following a police investigation into the incident, the District suspended the four students from school. (*Id.* ¶ 38.)

That same day, one of the students filed a Dignity for All Students Act ("DASA") claim against Langella. (*Id.*) The student alleged that members of the football team coaching staff, including Langella, verbally abused him during the 2016 season. (*Id.*) The District did not inform Langella about the DASA complaint for over 90 days, allegedly violating school policy. (*Id.*)

On December 5, 2017, a second DASA claim was lodged against Langella. (*Id.* ¶ 39.) This student complained that Langella had called him "Irish eyes." (*Id.*) As a result of this allegation, Matt Lawrence, Mahopac High School's principal, suspended Langella from his teaching duties, with pay, from December 5, 2017 until December 12, 2017. (*Id.*) When Langella returned on December 13, 2017, Lawrence informed him that, at Creedon's request, he would have a teaching assistant in his classroom. (*Id.* ¶ 40.)

Because of the stress of the DASA complaints, and on the advice of his physician, Langella took a medical leave of absence. (*Id.* ¶ 41.) Langella returned to work on January 2, 2018 and was immediately directed by Creedon to complete DASA training. (*Id.* ¶ 42.) Plaintiff complied with this directive. (*Id.*) However, on January 12, 2018, a third DASA claim was filed against Langella.

5

(*Id.* ¶ 43.)  This complaint alleged that in September 2016, when he was the varsity football coach, Langella punched a student's testicle.  (*Id.*)  Creedon suspended Langella with pay and reassigned him to his home.  (*Id.* ¶ 43.)

### E. Langella Files of a Notice of Claim and EEOC Charge and Receives Additional Discipline

On February 5, 2018, Langella filed an administrative charge of discrimination with both the United States Equal Employment Opportunity Commission ("EEOC") and the New York State Division of Human Rights ("DHR").  (*Id.* ¶ 13.)  Ten days later, Langella filed a Notice of Claim with the District on or about February 15, 2018.  (*Id.* ¶ 44.)  A General Municipal Law 50-h hearing was conducted on or about April 9, 2018.[2]  (*Id.*)

On April 6, 2018, Langella attended a meeting with Lawrence, Human Resources Director Debra Legato, Grievance Union Representative Adam Dusenberry, and Union Chief Grievance Officer Dave Gordon.  (*Id.* ¶ 45.)  During the meeting, Langella was informed that he would be given the findings from the 90-day DASA investigation; however, no findings were provided.  (*Id.*)  Then, Legato handed Langella an undated Teacher Corrective Action Plan that was placed in his file.  (*Id.*)  Langella was told to return to work the following workday.  (*Id.*)

Notwithstanding the directives at this meeting, DiCarlo, who had replaced Creedon as Superintendent on or about March 2018, informed Langella not to return to his original assignment.  (*Id.* ¶ 46.)  Instead, DiCarlo informed Langella that he would be writing curriculum in a District office for the remainder of the school year.  (*Id.*)  Later, on April 23, 2018, Mike Perna, a Union Representative, provided a draft Letter of Reprimand signed by DiCarlo regarding the DASA allegations.  (*Id.* ¶ 47.)  Langella refused to sign the letter, and it was eventually withdrawn and, notably, never placed in his personnel file.  (*Id.*)

---

[2]     Plaintiff alleges elsewhere in the AC that the hearing was conducted on April 6, 2018.  (*See* AC ¶ 12.)

The next month, on or about May 31, 2018, DiCarlo advised Langella that he would be returning to his full-time teaching duties as a high school chemistry teacher in September 2018.  (*Id.* ¶ 48.)  Consequently, Langella alleges that he was not granted a summer professional development schoolteacher training stipend, which he had received in prior years, causing him salary loss. (*Id.* ¶ 49.)  He further avers that he lost per session work opportunities during his periods of reassignment, as well as sick days during his stress-induced medical leave in December 2017.  (*Id.*)

**F.  Langella Receives Right to Sue Letter and Subsequently Files Suit**

On August 15, 2018, the EEOC issued its Right to Sue Letter to Langella.  (*Id.* Ex. A.) Thereafter, on October 30, 2018, he commenced this action.  (ECF No. 1.)

## LEGAL STANDARD

Under Rule 12(b)(6), courts must assess whether a complaint "contain[s] sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).  A court must accept all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but it is "'not bound to accept as true a legal conclusion couched as a factual allegation'" or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." *Id.* at 662.  A claim is facially plausible when the facts pleaded allow a court to make "a reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.

## DISCUSSION

### I.   Plaintiff's ADA, ADEA, and RA Claims[3]

Plaintiff asserts federal claims of (1) discrimination, (2) retaliation, and (3) hostile work environment.  (AC ⁋⁋ 51-55; Pl. Opp. 11-16.)  Defendants seek to dismiss each of these claims, arguing that many of Plaintiff's claims are time-barred, and that, in any event, they fail to plausibly state actionable claims under any of the federal statutes.  (Defs. Mem. of Law in Supp. of Mot. to Dismiss ("Defs. Mot."), ECF No. 38, 4-14.)  The Court addresses the parties' contentions below.

### A.  Timeliness of Plaintiff's ADEA and ADA Claims[4]

The Court begins by addressing the timeliness of Plaintiff's ADEA and ADA claims.  A plaintiff who wishes to bring a claim under the ADEA or ADA must first file an EEOC discrimination charge within 300 days of the date of the alleged unlawful practice.  *See Tewksbury v. Ottaway Newspapers*, 192 F.3d 322, 325-29 (2d Cir. 1999); *Harris v. City of New York*, 186 F.3d 243, 247-48 (2d Cir. 1999).  If not filed within this timeframe, the claim is time-barred.  *See Staten v. City of New York*, No. 14 CIV. 4307(ER), 2015 WL 4461688, at *8 (S.D.N.Y. July 20, 2015) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002)).  Here, Plaintiff alleges that he filed his administrative charge with the DHR on February 5, 2018 and cross-filed it with the

---

[3]   Plaintiff's ADEA, ADA, and RA claims can only be asserted against the District, as there is no individual liability under those statutes.  *See Wilson v. Lenox Hill Hosp./Northwell Health*, No. 19-CV-5537 (AMD) (LB), 2019 WL 6726304, at *4 (E.D.N.Y. Dec. 11, 2019) ("[N]either Title VII nor the ADEA provide for individual liability; only the employer may be named."); *Maus v. Wappingers Cent. Sch. Dist.*, 688 F. Supp. 2d 282, 302 (S.D.N.Y. 2010) ("[I]ndividuals cannot 'be named as defendants in ADA or Rehabilitation Act suits in their official or representative capacities.'").  Furthermore, to the extent Plaintiff brings claims against the individual Defendants in their "official capacities," those claims are "wholly redundant to [P]laintiff's claims against [the District] itself."  *See Emmons v. City Univ. of N.Y.*, 715 F. Supp. 2d 394, 407-08 (E.D.N.Y. 2010) (citing, *inter alia*, *Spiegel v. Schulmann*, 604 F.3d 72, 79-80 (2d Cir. 2010)).

[4]   Although Defendants move under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction (Def. Mot. 1), the "filing [of] a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court"; rather, it is "a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."  *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *see also Tompkins v. AlliedBarton Sec. Servs.*, 424 F. App'x 42, 43 (2d Cir. 2011) ("[T]he ADA's time limits for filing with the EEOC are not 'jurisdictional[.]'").  As such, the Court only considers Defendants' motion to dismiss under Rule 12(b)(6).

EEOC on the same date.  (AC ¶ 13.)  Therefore, any alleged incidents of discrimination that occurred before April 11, 2017 (*i.e.*, 300 days prior to February 5, 2018) are time-barred.

Plaintiff nevertheless argues that his time-barred claims can still be considered under the continuing violation doctrine.  (Pl. Opp. 9-10.)  Under that doctrine, if "a plaintiff has experienced a continuous practice and policy of discrimination, . . . the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." *Washington v. Cty. of Rockland*, 373 F.3d 310, 317 (2d Cir. 2004) (alterations in original) (quoting *Fitzgerald v. Henderson*, 251 F.3d 345, 349 (2d Cir. 2001)).  The doctrine is "'heavily disfavored in the Second Circuit' and courts have been 'loath' to apply it absent a showing of 'compelling circumstances.'" *Trinidad v. N.Y.C. Dep't of Corr.*, 423 F. Supp. 2d 151, 165 n.11 (S.D.N.Y. 2006).

"To qualify as continuing, the claimed actions must not be 'discrete acts,' but 'repeated conduct' that 'occurs over a series of days or perhaps years.'"  *Dash v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 238 F. Supp. 3d 375, 388 (E.D.N.Y. 2017) (quoting *Morgan*, 536 U.S. at 115). Examples of discrete acts "include disparate disciplining, negative performance reviews, termination, failure to promote, and denial of a preferred job position." *Zoulas v. N.Y.C. Dep't of Educ.*, 400 F. Supp. 3d 25, 50 (S.D.N.Y. 2019) (collecting cases).  "[M]ultiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Zabar v. N.Y.C. Dep't of Educ.*, No. 18 Civ. 6657 (PGG), 2020 WL 2423450, at *4 (S.D.N.Y. May 12, 2020) (quoting *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993)).

Here, Plaintiff contends he was subject to a "campaign of discrimination" based on his age and disability.  (Pl. Opp. 10.)  This campaign, Plaintiff maintains, included "inconvenient treatment of the football team's exercise requirements, false allegations of several kinds against him,

unwarranted disciplinary actions, and, ultimately, removal from the position of head coach." (*Id.*) The Court disagrees. Much of the conduct that is otherwise timely, such as the disciplinary action and failure to reappoint Plaintiff as head football coach,[5] squarely constitute "discrete acts" that fall outside the purview of the continuing violation doctrine. Although Plaintiff attempts to shoehorn these actions into the continuing violation doctrine with a conclusory assertion that such conduct was due to a "campaign of discrimination," he fails to plausibly allege how those acts were done pursuant to some discriminatory policy or mechanism. *See Zabar*, 2020 WL 2423450 at *4 (rejecting plaintiff's contention that discrete acts of discrimination were part of a "continuing chain of ill treatment"); *Zoulas*, 400 F. Supp. 3d at 50 (rejecting plaintiff's argument that "discrete discriminatory or retaliatory acts" were "part of an overall pattern of behavior" that constituted a continuing violation).

To the extent any of the above-noted conduct is related to Plaintiff's hostile work environment claim, the continuing violation doctrine is still of no avail. It is true that, in general, "[h]ostile work environment claims fall within the continuing violation framework." *Percy v. New York (Hudson Valley DDSO)*, 264 F. Supp. 3d 574, 582 (S.D.N.Y. 2017). These claims "may . . . be based on events outside the statute of limitations period as long as (1) the acts occurring before the . . . cutoff constitute part of the same actionable hostile work environment practice, and (2) *at least one act contributing to the claim occurs within the filing period*." *Garcia v. Yonkers Bd. of Educ.*, 188 F. Supp. 3d 353, 359 (S.D.N.Y. 2016) (emphasis added) (internal quotations and citations omitted). Here, however, although Plaintiff alleges a hostile work environment claim premised on the alleged remarks made to him prior to his hiring (Pl. Opp. 16), the conduct alleged within the

---

[5]    Plaintiff alleges that he applied for the coaching position on April 24, 2017, and the District formally announced its decision to hire another candidate on June 23, 2017. (AC ¶¶ 33-34.) This plausibly establishes that Plaintiff's failure to rehire discrimination claim occurred within the 300-day time limit.

300-day timeframe—to wit, failing to rehire Plaintiff has football coach, initiating DASA disciplinary investigations, suspending Plaintiff with pay, and other disciplinary conduct—are plainly "discrete acts" that "cannot be covered by a hostile work environment claim." *Pratt v. Brennan*, No. 18-CV-4799 (KMK), 2020 WL 364195, at *5 (S.D.N.Y. Jan. 22, 2020). At bottom, Plaintiff has failed to allege at least one act contributing to his hostile work environment claim that occurred within the 300-day filing period. *Garcia*, 188 F. Supp. 3d at 359. The continuing violation doctrine, therefore, does not salvage this claim.

In sum, any claimed discrimination, retaliation, or hostile work environment claim under the ADEA and ADA that accrued prior to April 11, 2017 is time-barred. The Court GRANTS Defendants' motion to dismiss Plaintiff's time-barred ADA and ADEA claims, with prejudice.

The Court now addresses the merits of Plaintiff's discrimination, retaliation, and hostile work environment claims.

### B.  Discrimination Claims

i.  *ADEA*

Under the ADEA, it is "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). This protection covers "individuals who are at least 40 years of age." *Id.* § 631(a). To state an ADEA discrimination claim, a plaintiff must allege that (1) he or she was "within the protected age group," (2) he or she was "qualified for the position," (3) he or she "experienced adverse employment action," and (4) "such action occurred under circumstances giving rise to an inference of discrimination." *Green v. Town of E. Haven*, 952 F.3d 394, 403 (2d Cir. 2020) (quoting *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010)). On a

motion to dismiss, a court "need determine only 'whether the allegations in the complaint give plausible support to the reduced *prima facie* requirements that arise . . . in the initial phase of a litigation." *Miller v. Dep't of Educ. of City of N.Y.*, No. 17-CV-594 (JPO), 2018 WL 1468703, at *2 (S.D.N.Y. Mar. 23, 2018) (quoting *Dressler v. City Sch. Dist. of N.Y.C.*, No. 15-cv-3696 (JPO), 2016 WL 4367967, at *3 (S.D.N.Y. Aug. 15, 2016)).

Defendants primarily contend that Plaintiff has failed to plausibly allege any adverse employment actions taken against him.  (Defs. Mot. 7-8.)  An adverse employment action occurs if an employee "endures a 'materially adverse change' in the terms and conditions of employment." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007) (quoting *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 639 (2d Cir. 2000)).  To be materially adverse, "a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Woolfolk v. N.Y.C. Dep't of Educ.*, No. 19-CV-3706 (RA), 2020 WL 1285835, at *6 (S.D.N.Y. Mar. 18, 2020) (quoting *Boonmalert v. City of New York*, 721 F. App'x 29, 32 (2d Cir. 2018)).  "A change that is 'materially adverse' could consist of, *inter alia*, 'a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'" *Zoulas*, 400 F. Supp. 3d at 53 (quoting *Kassner*, 496 F.3d at 238).

Here, Plaintiff primarily contends that the two adverse employment actions that make up his ADEA discrimination claim are Defendants' failure to rehire him for the varsity football coach position and the "disciplinary letters and false accusations from the District," seemingly a reference to the DASA complaints lodged against him by students and the accompanying investigations and reprimands stemming from those complaints.  (Pl. Opp. 12-13.)  As it relates to the DASA investigations and related disciplinary action, Plaintiff has not alleged any demotion, termination, or

material alteration of the terms of his employment.  *See Day v. City of New York*, No. 15 Civ. 4399(GBD)(HBP), 2015 WL 10530081, at *7 (S.D.N.Y. Nov. 30, 2015), *adopted by*, 2016 WL 1171584 (S.D.N.Y. Mar. 22, 2016) (investigation into complaints against plaintiff did not amount to materially adverse employment action); *Chang v. City of N.Y. Dep't for the Aging*, No. 11 Civ. 7062(PAC)(JLC), 2012 WL 1188427, at *6 (S.D.N.Y. Apr. 10, 2012), *adopted by*, 2012 WL 2156800 (S.D.N.Y. June 14, 2012) (concluding that plaintiff's receipt of a "Notice and Statement of Charges," which contained allegations of code of conduct violations and resulted in an "informal conference" wherein he was suspended without pay for five days, did not constitute an "adverse employment decision").  Indeed, the only alleged adverse actions were that Plaintiff was (1) directed to resume work under the supervision of a teaching assistant, (2) suspended *with pay*, (3) told that he would be resuming his teaching responsibilities in September 2018 after being directed to write curriculum in the District's office, and (4) handed a draft letter of reprimand that was never placed in his file.  None of these actions, without more, amount to a "material adverse change" in Plaintiff's employment.  *See, e.g., Joseph v. Leavitt*, 465 F.3d 87, 90-91 (2d Cir. 2006) (holding that administrative leave, with pay, during pendency of criminal charges, did not constitute adverse employment action); *Nidzon v. Konica Minolta Bus. Sols., USA, Inc.*, 752 F. Supp. 2d 336, 350 (S.D.N.Y. 2010) (explaining, on summary judgment, that "excessive scrutiny without a tangible negative consequence to the employee does not rise to the level of an adverse employment action"); *Gaidasz v. Genesee Valley Bd. of Co-op Educ. Sys. (BOCES)*, 791 F. Supp. 2d 332, 336-37 (W.D.N.Y. 2011) (noting, on summary judgment, that counseling memoranda was not an adverse employment action without evidence of effect on pay, benefits, and position); *Danieu v. Teamsters Local 264*, No. 08-CV-00500S, 2011 WL 1259839, at *7 (W.D.N.Y. Mar. 31, 2011) ("[W]ritten or verbal reprimands, without more, cannot be considered adverse employment actions.").

Conversely, Plaintiff's contention that he was not rehired for the varsity football head coach position plausibly establishes a material adverse employment action. *See, e.g.*, *Hausdorf v. N.Y.C. Dep't of Educ.*, No. 17-CV-2115 (PAE)(SN), 2018 WL 1871945, at *6 (S.D.N.Y. Jan. 25, 2018), *adopted by*, 2018 WL 895657 (S.D.N.Y. Feb. 14, 2018) (concluding that a decision not to rehire plaintiff as a softball coach for the next school year constituted a materially adverse change in working conditions). However, that claim falls victim to the larger defect: the allegations fail to establish an inference of discriminatory intent.

In general, a plaintiff must provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent."[6] *Luka v. Bard College*, 263 F. Supp. 3d 478, 484-85 (S.D.N.Y. 2017) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)). "An inference of discrimination can arise from a variety of circumstances, including but not limited to, the employer's criticism of the plaintiff's performance in . . . degrading terms [based on a protected characteristic]; [] its invidious comments about others in the employee's protected group; [] the more favorable treatment of employees not in the protected group; or the sequence of events leading to plaintiff's discharge." *Pustilnik v. Battery Park City Auth.*, No. 18-CV-9446 (RA), 2019 WL 6498711, at *4 (S.D.N.Y. Dec. 3, 2019) (internal quotation and citation omitted).

As the above makes clear, "verbal comments [can] constitute evidence of discriminatory motivation when a plaintiff demonstrates that a nexus exists between the allegedly discriminatory

---

[6]   Courts in in this circuit have split on whether a plaintiff in an ADEA case must plead "but-for" causation or merely provide minimal support of a discriminatory intent. *Compare Woolfolk v. N.Y.C. Dep't of Educ.*, No. 19-CV-3706 (RA), 2020 WL 1285835, at *6 (S.D.N.Y. Mar. 18, 2020) (ruling that "'an ADEA complaint must contain sufficient facts to make plausible the conclusion that 'but for' [her] age,' Plaintiff would not have suffered the adverse employment action") *with Zoulas*, 400 F. Supp. 3d at 52 (following the "minimal inference" standard for a motion to dismiss rather than the "but-for" causation standard espoused in *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009)). Although, in the Court's view, the clear weight of authority appears to militate in favor of applying a "but-for" causation pleading standard under the ADEA, the Court need not decide this issue because Plaintiff has failed to establish even the requisite "minimal inference" of discriminatory intent necessary to survive a motion to dismiss.

statements and a defendant's [adverse employment decision]." *Pronin v. Raffi Custom Photo Lab., Inc.*, 383 F. Supp. 2d 628, 636 (S.D.N.Y. 2005).  However, mere stray remarks do not constitute sufficient evidence to support a case of employment discrimination.  *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998).  Moreover, "[w]hile allegations that a younger employee has been favored over a qualified plaintiff can be sufficient to provide the basis for an inference of discrimination," *Luka*, 263 F. Supp. 3d at 486, "no inference of age discrimination can be drawn 'from the replacement of one worker with another worker insignificantly younger." *Lomonoco v. Saint Anne Inst.*, 768 F. App'x 43, 44 (2d Cir. 2019) (quoting *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996)); *see also Pustilnik*, 2019 WL 6498711 at *5 (finding no inference of discrimination where both plaintiff and her replacement were "over the age of 40" and thus "within the same protected class").

In the AC, Plaintiff primarily offers two facts to support an inference of discriminatory intent related to his age.  *First*, on January 28, 2016, Creedon asked if Plaintiff was close to retirement. (AC ⁋ 21.)  *Second*, on March 8, 2016, Sclafani asked Plaintiff if he was retiring and stated that Plaintiff was part of the "old guard," which was allegedly why the District was soliciting out-of-district coaching applications.  (*Id.* ⁋ 24.)  In isolation, these allegations could plausibly (although barely) establish the "minimal support" Plaintiff would need to plead discriminatory intent. *Cf. Zoulas*, 400 F. Supp. 3d at 56 (noting that allegations that employer called plaintiff a "dinosaur" and "trapped in a time warp," as well as comments that he was "getting up there in years and [was] too old for th[e] job and should just retire" provided "at least minimal support for the proposition that [defendants] were motivated by discriminatory intent").  But when considering the full context and general timing outlined in the AC and Plaintiff's opposition, the inference of discriminatory intent vanishes.

To begin, notwithstanding these comments, the District offered Plaintiff the head coach position at a time when he was within the protected age group.[7]  *See Pustilnik*, 2019 WL 6498711 at *6; *Spires v. MetLife Grp., Inc.*, No. 18-CV-4464 (RA), 2019 WL 4464393, at *8 (S.D.N.Y. Sept. 18, 2019) ("Although the ADEA does not necessarily foreclose an age-discrimination claim when a plaintiff was over forty years old when first hired, this substantially weakens any inference of discrimination on Defendants' part.").  He was then replaced by an individual who is also within the protected class of individuals under the ADEA and only seven years younger, which further undermines any inference of discriminatory intent.  *See Pustilnik*, 2019 WL 6498711 at *5.

More problematically, the alleged comments about Plaintiff's age were made in an entirely different context than the subsequent decision to not rehire him, and the rehiring decision occurred over a year after the alleged comments.  It is of further note that, within that year, Plaintiff was subject to various complaints about his alleged misconduct as a head coach,[8] resulting in letters of counseling.  Taken together, these facts seemingly extinguish any remaining connection between the pre-hiring, age-related statements and the District's subsequent decision not to rehire Plaintiff as head coach.  *See Luka*, 263 F. Supp. 3d at 485 (explaining that "[o]n the face of the Second Amended Complaint, Plaintiff provides evidence that her 'mid-career' *age* was not the reason for the FERC's decisions to deny her tenure application," but instead it was "the [employer's] concern that, as a mid-career professional, Plaintiff had not published more to-date").  Rather, as pleaded, the

---

[7]     Although Plaintiff alleges that the teachers' union filed a grievance, the grievance was based on the District's alleged violation of the teachers' collective bargaining agreement.  (AC ⁋ 20.)  That agreement, as Plaintiff notes, relates to Plaintiff's contractual rights by virtue of being an active employee.  (*Id.*)  There is no indication from the AC that Plaintiff's age or disability played a part in that grievance or its eventual resolution.

[8]     Specifically, Plaintiff was accused of using foul language, making threatening statements, and announcing his assistant coaches without board approval.  (AC ⁋ 32.)  Plaintiff was also accused of cutting locks (*id.* ⁋ 28), but as he notes, that allegation was eventually dropped (*id.* ⁋ 34).  Notably, although Plaintiff contends that the lock cutting allegation was false, he does not allege that the other incidents served as pretext for the District's decision, nor does he plausibly allege any facts that would allow the Court to draw that inference.  *Cf. Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 22 (2d Cir. 2015) (vacating district court's dismissal of ADA discrimination claim where "[t]here was . . . proof of pretext in [her] . . . [a]mended [c]omplaint").

comments by Creedon and Sclafani appear to simply be "stray remarks" without a true causal nexus to the alleged discriminatory action.  *See Kouassi v. N.Y.C. Dep't of Homeless Servs.*, No. 14-CV-7445 (RRM) (LB), 2017 WL 4342093, at *5 (E.D.N.Y. Sept. 25, 2017) ("[T]he more remote and oblique [a] remark[ ] [is] in relation to the employer's adverse action, the less [it] prove[s] that the action was motivated by discrimination." (quoting *Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 115 (2d Cir. 2007))); *Moore v. Verizon*, No. 13-CV-6467 (RJS), 2016 WL 825001, at *4 (S.D.N.Y. Feb. 5, 2016) (explaining that statements regarding "retirement or hearing loss are non-actionable stray remarks" where remarks occurred "at least months before Plaintiff's first suspension and nearly a year prior to her termination," and were not "alleged to have arisen in the context at all related to the decision to suspend or later terminate").

Without any other allegations to sufficiently impute a discriminatory animus to Defendants' rehiring decision, Plaintiff has failed to establish the "minimal inference" of discriminatory intent needed to nudge his ADEA claim from conceivable to plausible.  The Court GRANTS Defendants' motion to dismiss Plaintiff's timely ADEA discrimination claims, without prejudice.

    ii.   *ADA/RA*

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  To sufficiently plead a claim for employment discrimination under the ADA, a plaintiff must demonstrate that (1) his or her employer is subject to the ADA; (2) he or she was disabled within the meaning of the ADA; (3) he or she was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) he or she suffered an adverse employment action because of the disability.  *Sista v. CDC Ixis*

*N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (quoting *Giordano v. City of New York*, 274 F.3d 740, 747 (2d Cir. 2001)).

Similarly, under the RA, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).  As the Second Circuit has explained, "the standards under [the ADA and RA] are generally the same." *Wright v. N.Y.S. Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016).  Moreover, "where, as here, the subtle distinctions between the statutes are not implicated, courts 'treat claims under the two statutes identically.'" *Hill v. LaClair*, No. 9:20-CV-0441 (DNH/ATB), 2020 WL 2404771, at *7 (N.D.N.Y. May 11, 2020) (quoting *Wright*, 831 F.3d at 72); *accord Seitz v. New York State*, No. 2:18-CV-4149 (PKC) (LB), 2019 WL 4805257, at *12 (E.D.N.Y. Sept. 30, 2019) ("Claims of disability discrimination brought pursuant to Title I of the ADA and the Rehabilitation Act are analyzed under the same standards.").

In moving to dismiss, Defendants contend that Plaintiff has failed to sufficiently plead a disability under the ADA.  The Court agrees.  "Not every impairment is a 'disability' within the meaning of the ADA." *Williams v. N.Y.C. Dep't of Educ.*, No. 18-CV-11621 (RA), 2020 WL 906386, at *4 (S.D.N.Y. Feb. 25, 2020) (quoting *Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005)).  Instead, "a qualifying disability 'must limit a major life activity and the limitation must be substantial.'" *O'Hara v. Bd. of Coop. Educ. Servs., S. Westchester*, No. 18-CV-8502 (KMK), 2020 WL 1244474, at *12 (S.D.N.Y. Mar. 16, 2020).  "In other words, the ADA protects only a limited class of persons—individuals who suffer from impairments significantly more severe than those encountered by ordinary people in everyday life." *Sussle v. Sirina Prot. Sys. Corp.*, 269 F. Supp. 2d 285, 300 (S.D.N.Y. 2003) (internal quotations and citations omitted).

To successfully plead a qualifying disability under the ADA, a plaintiff "must allege which major life activity or activities their impairment substantially affects." *Laface v. E. Suffolk BOCES*, No. 2:18-cv-1314 (ADS) (AKT), 2020 WL 2489774, at *10 (E.D.N.Y. May 18, 2020). "'Major life activities' include: 'caring for oneself, performing manual tasks, seeing, hearing, eating*, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.'" *Andino v. Fischer*, 698 F. Supp. 2d 362, 378 (S.D.N.Y. 2010) (quoting 42 U.S.C. § 12102(2)(A)). "The term '[s]ubstantially limits' is not meant to be a demanding standard," but it is "well-established that an impairment does not significantly restrict a major life activity if it results only in mild limitations." *Collins v. Giving Back Fund*, No. 18 Civ. 8812 (CM), 2019 WL 3564578, at *13 (S.D.N.Y. Aug. 6, 2019) (quoting *Whalley v. Reliance Grp. Holdings, Inc.*, No. 97 Civ. 4018(VM), 2001 WL 55726, at *4 (S.D.N.Y. Jan. 22, 2001)). Moreover, it is not enough for a plaintiff to only "allude to her [or his] impairments in her [or his] pleadings; she [or he] must plead *how* those impairments significantly impacted her [or his] major life activities. *Id.*

Here, Plaintiff points to two medical issues at the heart of his ADA and RA claims: (1) his hearing impairment (deafness in his right ear) and tinnitus, and (2) his hypertension and heart disease. (AC ⁋ 16.) Yet Plaintiff has failed to plausibly allege that either condition constitutes a disability within the meaning of the ADA. As an initial matter, Plaintiff does not allege how, if at all, his hypertension or heart disease impacts a major life activity, let alone that either significantly restricts it. *Williams*, 2020 WL 906386 at *5 (holding that allegations that plaintiff suffered from severe hypertension, without any explanation of how it substantially limited one or more major life activities, did not satisfy the ADA's definition of disability). Plaintiff's claims related to his hearing impairment are similarly deficient. The AC is devoid of any allegation—plausible or otherwise— that indicates how his life activities are significantly restricted. At most, the Court can discern that

19

Plaintiff's "deafness in his right ear" and tinnitus causes him to speak at a higher volume.  (AC ¶ 22.)
But the fact that Plaintiff has to speak at a higher volume does not render his condition a disability
under the ADA.[9]  *See Fraterrigo v. Akal Sec., Inc.*, No. 06 Civ. 9861(SHS), 2008 WL 4787548, at
*5 (S.D.N.Y. Oct. 29, 2008) (noting, on summary judgment, that, in the absence of evidence
establishing that plaintiff's hearing loss substantially impacted a major life activity, plaintiff failed
to establish a disability under the ADA).

Even if he had alleged a disability under the ADA, Plaintiff has also failed to plausibly allege
discriminatory intent.  As the Second Circuit has explained, "the ADA requires a plaintiff alleging
a claim of employment discrimination to prove that discrimination was the but-for cause of any
adverse employment action."  *Natofsky v. City of New York*, 921 F.3d 337, 348 (2d Cir. 2019);
*O'Hara*, 2020 WL 1244474 at *11 (S.D.N.Y. Mar. 16, 2020) (explaining that, in order to survive a
motion to dismiss, "Plaintiff must establish not only the presence of discriminatory motive, but that
this motive was a 'but-for' cause of the adverse action").  Claims under the RA are subject to the
same causation standard.  *Natofsky*, 921 F.3d at 346.

Here, the "but-for" connection between Defendants' employment decisions and Plaintiff's
disabilities is clearly lacking.  As an initial matter, Plaintiff has not alleged any facts that indicate
that his hypertension and heart problems were even vaguely considered by Defendants in their hiring
and disciplinary practices.  And Plaintiff's claims related to his hearing impairment fair no better.

---

[9]      Plaintiff argues that the ADA prohibits discrimination against an individual who, while not actually suffering
from a disability, is perceived as having a disability.  (Pl. Opp. 13-14.)  While true, the employer must also
perceive that the disability is substantially limiting.  *Gaddis v. Bd. of Educ. for E. Ramapo Cent. Sch. Dist.*, No.
08 Civ. 07220(PGG), 2008 WL 4695022, at *2 (S.D.N.Y. Oct. 22, 2008) ("In order to proceed with a perceived
disability claim, Gaddis must show that . . . he had an impairment that was not substantially limiting, but was
treated as though the impairment was substantially limiting[.]").  Again, all Plaintiff alleges is that certain
individuals thought he was loud.  That is not enough to establish that his employer perceived that his disability
substantially limited a major life activity.  *See Amie v. Shinseki*, 806 F. Supp. 2d 641, 644 (W.D.N.Y. 2011)
(explaining that "the mere fact that an employer is aware of an employee's impairment is insufficient to
demonstrate either that the employer regarded the employee as disabled or that perception caused the adverse
employment action" (quoting *Cody v. Cty. of Nassau*, 577 F. Supp. 2d 623, 643 (E.D.N.Y. 2008))).

The only allegations Plaintiff proffers are the remarks that Plaintiff had a "loud voice."  But, similar to the issue with the age-related comments, these comments were made over a year before the re-hiring and disciplinary decisions at issue and in a different context.  Consequently, these "stray remarks" lack a plausible nexus to Defendants' purported discriminatory conduct.  *See Luka*, 263 F. Supp. 3d at 487 (explaining that remarks about age that were neither "made close in time nor in relation to the specific employment decision" did not raise an inference of discrimination).

In the absence of any other facts that plausibly establish a disability under the ADA or that the disability was the "but-for" cause of any adverse employment decision, the Court GRANTS Defendants' motion to dismiss Plaintiff's timely ADA discrimination claims, without prejudice.

### C.  Retaliation Claims

It is well settled that retaliation claims under the ADEA and ADA are analyzed under the same framework.  *Smith v. N.Y.C. Dep't of Educ.*, No. 18 Civ. 8545 (PGG), 2019 WL 6307471, at *11 (S.D.N.Y. Nov. 25, 2019) (citing *Cerni v. J.P. Morgan Sec. LLC*, 208 F. Supp. 3d 533, 538 (S.D.N.Y. 2016); *Treglia v. Town of Manilus*, 313 F.3d 713, 719 (2d Cir. 2002); *Weixel v. Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 148 (2d Cir. 2002)).  To establish a *prima facie* case of retaliation, a plaintiff must show "(1) the employee was engaged in an activity protected by [the applicable statute], (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action."  *Furk v. Orange-Ulster BOCES*, No. 15-cv-6594 (NSR), 2016 WL 6560408, at *3 (S.D.N.Y. Nov. 2, 2016) (quoting *Moore*, 2016 WL 825001 at *4).  At the pleading stage, the allegations of retaliation "need only give plausible support to the reduced prima facie requirements."  *Littlejohn*, 795 F.3d at 316.  In other words, "for a retaliation claim to survive . . . a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an

adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015).

To plead causation, a plaintiff must allege "that his [or her] protected activity was the but-for cause of the adverse employment action." *Ninying v. N.Y.C. Fire Dep't*, --- F. App'x ---, 2020 WL 1898818, at *2 (2d Cir. 2020); *Bailey v. Mount Vernon City Sch. Dist.*, No. 17-CV-9973 (KMK), 2020 WL 1528481, at *12 (S.D.N.Y. Mar. 30, 2020) (explaining that "recent Second Circuit decisions . . . conclusively establish[] that 'but-for' causation is required for each of Plaintiff's claims," including retaliation). In so pleading, "a plaintiff can rely solely on temporal proximity to establish the requisite causal connection between her [or his] protected activity and the materially adverse action that she [or he] allegedly suffered in retaliation for engaging in that activity." *Wang v. Palmisano*, 157 F. Supp. 3d 306, 327 (S.D.N.Y. 2016). Although there is no bright line rule "to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship," *see Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cty.*, 252 F.3d 545, 554 (2d Cir. 2001), the "temporal proximity must be 'very close.'" *Garcia*, 188 F. Supp. 3d at 360 (citing *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). To that end, "courts in this Circuit generally hold that a gap longer than two months severs the inferred causal relationship." *Graham v. Macy's, Inc.*, No. 14 Civ. 3192 (PAE), 2016 WL 354897, at *9 (S.D.N.Y. Jan. 28, 2016); *Knox v. Town of Southeast*, No. 11 Civ. 8763(ER), 2014 WL 1285654, at *11 (S.D.N.Y. Mar. 31, 2014) ("Indeed, many of the decisions in this Circuit that have addressed the issue have held that a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation.").

In assessing Plaintiff's retaliation claim, the Court will focus on any conduct that occurred after he filed his administrative charge of discrimination with the DHR and EEOC. *See Pinero v.*

*Long Island State Veterans Home*, 375 F. Supp. 2d 162, 168 (E.D.N.Y. 2005) ("There can be no inference of retaliatory animus where the adverse employment action occurred prior to the protected activity.").   To this end, Plaintiff points to the following incidents as forming the basis of his retaliation claim: (1) the corrective action plan, (2) the draft letter of reprimand, (3) the DASA accusations, and (4) the denial of per session opportunities and a summer stipend.  (Pl. Opp. 15-16.)

Assuming, without deciding, that these incidents are adverse employment actions for purposes of assessing the retaliation claims,[10] the Court concludes that Plaintiff has failed to plausibly allege that the protected activity was the "but-for" cause of Defendants' actions.  As an initial matter, much of the alleged "retaliation" was premised on, or building off, student complaints filed, and investigations commenced, prior to Plaintiff's protected activity.  For example, the corrective action plan appears to be related to the 90-day investigation of the DASA claims that were filed before Plaintiff lodged his administrative charge.  (AC ⁋ 45.)  Thus, even if Plaintiff received the corrective action plan at a time that was temporally close to his protected activity, the "gradual adverse job actions began well before [] [P]laintiff had ever engaged in any protected activity," such that "an inference of retaliation does not arise."  *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001); *Lawtone-Bowles v. City of New York*, 2019 WL 652593, at *5 (S.D.N.Y. Feb. 15, 2019) ("[W]here the pleadings reveal 'adverse [disciplinary] actions [that] were both part, and the ultimate product, of an extensive period of progressive discipline' that began before any protected activity, the Court will not infer retaliatory animus based on temporal proximity alone.").

---

[10]   When analyzing whether an adverse employment action has occurred in the retaliation context, courts will look to "whether the alleged adverse employment action could have dissuaded a reasonable employee in the plaintiff's position from complaining about unlawful discrimination."  *Harewood v. N.Y.C. Dep't of Educ.*, No. 18-cv-05487 (KPF) (KHP), 2019 WL 3042486, at *8 (S.D.N.Y. May 8, 2019), *adopted by*, 2019 WL 2281277 (S.D.N.Y. May 29, 2019) (citing *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006); *Davis-Garrett v. Urban Outfitters, Inc.*, 921 F.3d 30, 43 (2d Cir. 2019)).  This standard is "broader and encompasses more conduct than an adverse action for a [discrimination] claim." *Hongmian Gong v. City Univ. of N.Y.*, No. 18 Civ. 3027 (LGS), 2019 WL 952340, at *7 (S.D.N.Y. Feb. 27, 2019).

The same conclusion is warranted for the "draft Letter of Reprimand," which was not even placed in Plaintiff's file, and Plaintiff's "lost per session work opportunities." (AC ¶¶ 47, 49.) Like the corrective action plan, the draft letter was "regarding the DASA allegations," and the AC clearly indicates that the DASA allegations, and any accompanying investigation, preceded Plaintiff's protected activity. Meanwhile, Plaintiff's "lost per session work opportunities" were connected to his reassignment, which was, in turn, part and parcel with the steady buildup of disciplinary actions taken by the District in connection with the various DASA complaints lodged against Plaintiff.

The final retaliatory action alleged in the AC appears to be the denial of a summer training stipend. To the extent this is not tied to Plaintiff's denial of "per session" opportunities, this action, too, fails to support a plausible claim of retaliation. As an initial matter, even drawing all inferences in Plaintiff's favor, the only reasonable conclusion is that this decision was also tied to the steady increase in discipline that pre-dated the EEOC charge filing. Separately, from a temporal standpoint, the denial decision—in the absence of any other indicia of retaliatory intent—is too far removed from the protected activity (approximately four months) to raise an inference of causation.

In short, Plaintiff has failed to plausibly allege a "but-for" connection between his protected activity and the retaliatory conduct alleged in the AC. The Court GRANTS Defendants' motion to dismiss Plaintiff's retaliation claims, without prejudice.

### D.  Hostile Work Environment Claims

The standard for demonstrating a hostile work environment is the same under the ADEA, ADA, and RA. *Leftridge v. N.Y.C. Dep't of Educ.*, No. 17cv7027, 2020 WL 1503665, at *11 (S.D.N.Y. Mar. 30, 2020) (collecting cases); *Murtha v. N.Y.S. Gaming Commission*, No. 17 Civ. 10040 (NSR), 2019 WL 4450687, at *9 (S.D.N.Y. Sept. 17, 2019) (explaining that the standard for hostile work environment is the same under ADEA and ADA). "A hostile work environment claim

requires a showing [1] that the harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' and [2] that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)). "As a general rule, incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Id.* at 374 (quoting *Perry*, 115 F.3d at 149). Courts will consider "the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interferes with [the] employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). "Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness." *Alfano*, 294 F.3d at 374.

Here, Plaintiff's hostile work environment claim is based on the comment about him being part of the "old guard," the two questions about when he would retire, and the comments about his loud voice.[11]   (Pl. Opp. 16.)  Even if not time-barred, these incidents do not establish a plausible hostile work environment claim.

As an initial matter, Plaintiff has failed to establish that this conduct was pervasive.  Although there is "no fixed number of incidents that a plaintiff must endure to establish a hostile work environment claim," *Alfano*, 294 F.3d at 379, five remarks—three related to Plaintiff's age and two

---

[11]   Insofar as Plaintiff incorporates the accusations about his purported misconduct as a football coach into his hostile work environment claim (AC ⁋ 32), the AC does not suggest that any of those accusations were premised on either his age or his disability. *See Cornetta v. Town of Highlands*, No. 18-CV-12070 (KMK), 2020 WL 363042, at *11 (S.D.N.Y. Jan. 22, 2020) ("[T]here are simply no allegations in the Amended Complaint at all that suggest that Village Defendants created a hostile work environment *because of* Plaintiff's purported disability.").  Moreover, even if the Court considered the various DASA complaints—which were lodged against Plaintiff *by students*—there is "no specific basis for imputing [their] conduct" to the District based on the facts alleged. *See Doner-Hendrick v. N.Y. Inst. of Tech.*, No. 11 Civ. 121(SAS), 2011 WL 2652460, at *7 (S.D.N.Y. July 6, 2011) (rejecting contention that a "hostile work environment" arose from "student body's general hostility toward her as an Asian, female, and non-Moslem").  Nor is there any indication that those allegations relate to Plaintiff's age or disability.

related to his voice—uttered over the course of approximately one month will not suffice. *See, e.g.*, *Guity v. Uniondale Union Free Sch. Dist.*, No. 18-cv-04369 (AMD) (AKT), 2019 WL 3402280, at *5 (E.D.N.Y. July 26, 2019) (concluding that "sporadic remarks over the course of two months" that were allegedly racially discriminatory were "insufficient to sustain a hostile work environment claim"); *Robinson v. Purcell Const. Corp.*, 859 F. Supp. 2d 245, 255 (N.D.N.Y. Mar. 14, 2012) (granting summary judgment on "hostile work environment claim" where defendant alleged "three or four comments that specifically reference her anxiety medication, and one or two additional comments" about her anxiety, depression, or PTSD, because the conduct "amounted merely to sporadic offensive utterances"); *Lessambo v. PricewaterhouseCoopers, L.P.*, No. 08 Civ. 6272 (WHP), 2010 WL 3958787, at *11 (S.D.N.Y. Sept. 27, 2010) (concluding that "three offensive remarks about [] national origin" in a one month period did not suffice to support a hostile-work-environment claim). In any event, Plaintiff has failed to allege that Defendants' conduct was sufficiently severe. At most, the alleged comments, whether viewed in isolation or together, were minor "offensive utterances," and there is no indication—directly or indirectly—that the comments unreasonably interfered with Plaintiff's work performance.

Overall, Plaintiff has failed to allege any facts that establish a plausible hostile work environment claim. The Court GRANTS Defendants' motion to dismiss those claims. To the extent Plaintiff's hostile work environment claims are time-barred, dismissal is with prejudice.

## II.   Plaintiff's State-Law Claims

Plaintiff alleges several state-law claims against both the District and the individual Defendants. (AC ¶¶ 56-63.) Specifically, Plaintiff brings claims under the NYSHRL for disability and age discrimination, as well as claims of defamation and tortious interference with contract that are related to the same underlying facts. (Defs. Mot. 15-20.) In their moving papers, Defendants

argue that (1) the majority of Plaintiff's NYSHRL claims are untimely, and, regardless, fail for the same reasons as his ADEA, ADA, and RA claims; and (2) Plaintiff has not alleged sufficient facts to even minimally support his state common law claims.  (*Id.*)

Before the Court assesses the viability of Plaintiff's state-law claims, however, it must first determine whether to exercise supplemental jurisdiction over those claims, given that it has dismissed all of Plaintiff's federal claims. On this point, Defendants urge that exercising supplemental jurisdiction is warranted because Plaintiff's state and federal claims "arise under an identical set of events." (*Id.* at 14.) As explained below, the Court agrees.

Federal courts have supplemental jurisdiction over non-federal claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). But in the event a court dismisses "all claims over which it has original jurisdiction," it "may decline to exercise supplemental jurisdiction" over those non-federal claims. *Id.* § 1367(c)(3). When deciding whether to exercise supplemental jurisdiction over a claim, a district court should "consider and weigh . . . the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining jurisdiction over the remaining state-law claims." *In re Merrill Lynch Ltd. P'ship Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (internal citations and quotations omitted).

Here, however, the balance of factors supports exercising supplemental jurisdiction over Plaintiff's state-law claims.  As it relates to Plaintiff's NYSHRL claims, the standards between the ADA, ADEA, RA, and NYSHRL are virtually identical (as discussed below) and would be applied to the same set of facts.  Moreover, because the standards are identical, deciding the NYSHRL claims would not require an investment of additional judicial resources, and there would be no comity issues

triggered.  *See Oliver v. N.Y.S. Police*, No. 1:19-cv-233 (BKS/DJS), 2020 WL 1849484, at \*10 (N.D.N.Y. Apr. 13, 2020) ("However, where, as here, the 'standards of liability are identical under [federal law] and the NYSHRL[,] deciding the state-law claims does not require the investment of additional judicial resources,' and there is no 'substantial comity concern raised by this Court's application of state law with which courts in this District are eminently familiar,' the Court concludes 'the values of judicial economy, convenience, fairness, and comity,' support the exercise of supplemental jurisdiction over Plaintiff's NYSHRL claims." (internal quotations omitted)); *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 413 (S.D.N.Y. 2014) (same).

The balance of factors similarly militates in favor of exercising supplemental jurisdiction over Plaintiff's state common law claims.  Although the claims each have their own distinct elements, they largely arise out of the same set of facts as Plaintiff's employment discrimination claims.  Accordingly, the Court would not need to expend additional judicial resources to resolve them.  Nor can the Court discern any issues of comity that would arise from exercising supplemental jurisdiction over these garden-variety common law claims.

Having decided that it will continue to exercise supplemental jurisdiction, the Court now turns to Plaintiff's various state-law claims.

### A.  NYSHRL Claims

#### i.   Timeliness

As a preliminary matter, Defendants contend that the majority of Plaintiff's NYSHRL claims are untimely.  (Defs. Mot. 15.)  In so arguing, Defendants urge this Court to conclude that the statute of limitations is not tolled by the filing of an EEOC charge against a school district, and, therefore, Plaintiff's NYSHRL claims related to actions that occurred prior to October 30, 2017 are time-barred.  (*Id.*)  The Court disagrees.

In general, claims arising under the NYSHRL are subject to a three-year statute of limitations. *See George v. Prof'l Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 436 (S.D.N.Y. 2016). But if a claim is against an educational institution, the statute of limitations is one year. *Konteye v. N.Y.C. Dep't of Educ.*, No. 17-cv-2876 (GBD) (RWL), 2019 WL 4418647, at *10 (S.D.N.Y. Apr. 10, 2019), *adopted by*, 2019 WL 3229068 (S.D.N.Y. July 18, 2019) (citing N.Y. Educ. Law § 3813(2-b)). This one-year statute of limitations is applied to school officers, such as "member[s] of a board of education," "superintendent[s] of schools," "district superintendent[s]," or "other elective or appointive officer[s] in a school district whose duties generally relate to the administration of affairs connected with the public school system." N.Y. Educ. Law § 2(13); *see Cincotta v. Hempstead Union Free Sch. Dist.*, No. 15-cv-4821 (ADS)(AKT), 2016 WL 4536873, at *17 (E.D.N.Y. Aug. 30, 2016) (holding that one-year statute of limitations applied to the district, its superintendent, and the district's board of education).

Although the Second Circuit has yet to decide the issue, numerous courts in this Circuit have determined that the filing of an EEOC charge generally tolls the statute of limitations on related NYSHRL claims. *Schneider v. Wal-Mart Stores, Inc.*, No. 16-cv-2010 (NSR), 2019 WL 294309, at *3 (S.D.N.Y. Jan. 23, 2019) (collecting cases); *E.E.O.C. v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 831 (S.D.N.Y. 2013) ("The limitations period [for a NYSHRL claims] tolls . . . during the period in which a complaint is filed with the EEOC and the issuance by the EEOC of a right-to-sue letter."). Courts, however, appear to disagree on whether the filing of an EEOC charge tolls the statute of limitations period for NYSHRL actions *against school districts*. *Compare Livingston v. Roosevelt Union Free Sch. Dist.*, No. 17-CV-4189 (JMA)(SIL), 2020 WL 1172642, at *5 (E.D.N.Y. Jan. 15, 2020), *adopted by*, 2020 WL 1166450 (E.D.N.Y. Mar. 11, 2020) (concluding that the one-year statute of limitations for NYSHRL claims against school district tolled while EEOC charge is

pending), *and Riccardo v. N.Y.C. Dep't of Educ.*, No. 16 Civ. 4891 (LAK) (JCF), 2016 WL 7106048,

at *6-7 (S.D.N.Y. Dec. 2, 2016), *adopted sub nom.*, *United States v. N.Y.C. Dep't of Educ.*, 2017

WL 57854 (S.D.N.Y. Jan. 4, 2017) (same), *with Ferraro v. Ramapo Central Sch. Dist.*, No. 17 CV

2039 (VB), 2017 WL 6343686, at *3 (S.D.N.Y. Dec. 11, 2017) ("While courts are divided regarding

whether the statute of limitations is tolled during the pendency of an EEOC complaint, the weight

of the authority suggests that NYSHRL claims brought against school districts and boards pursuant

to Education Law § 3813(2–b) are not tolled during that time."); *Smith v. Tuckahoe Union Free Sch.

Dist.*, No. 03 Civ. 7951(PGG), 2009 WL 3170302, at *11 n.9 (S.D.N.Y. Sept. 30, 2009) (same).

Many of the courts that have concluded that the one-year statute of limitations is not tolled

by the filing of an EEOC charge rely on the New York Court of Appeal's opinion in *Amorosi v. S.

Colonie Indep. Cent. Sch. Dist.*, 9 N.Y.3d 367 (2007), as well as the "clear intent of the New York

legislature to limit lawsuits against school districts." *See, e.g.*, *Smith*, 2009 WL 3170302 at *11 n.9.

But those courts that have tolled the statute of limitations have observed that "*Amorosi* is inapposite

[because] . . . tolling was not at issue in the case."[12] *Riccardo*, 2016 WL 7106048 at *7; *see also

Livingston*, 2020 WL 1172642 at *5 (observing that "other courts' reliance on *Amorosi*, when ruling

that claims against school districts cannot be tolled, is misplaced because tolling was not at issue in

that decision—it merely confirmed that NYSHRL claims against school districts are subject to a

one-year, rather than a three-year, statute of limitations").  Those courts have further noted that,

although the New York legislature expressed a clear intent to shorten the statute of limitations,

---

[12] Indeed, the *Amorosi* Court was asked "to determine the statute of limitations applicable to a damages claim for illegal workplace discrimination brought under [the NYSHRL] against a school district." 9 N.Y.3d at 369.  It answered that question by concluding that the "statute of limitations on such a claim is one year." *Id.*  In so holding, the Court analyzed the text of New York Education Law § 3813, as well as its legislative history.  Upon its review, the Court concluded that the "Legislature's intent is discernible from the unequivocal language of subdivision (2-b)," such that there was no basis, as petitioner urged, to apply a three-year statute of limitations to claims against school districts under the NYSHRL.  *Id.* at 373.  As other courts have acknowledged, there is no discussion regarding tolling, nor does it appear that the New York Court of Appeals implicitly considered tolling issues when reaching its conclusion.

Section 3813 conspicuously does not address tolling, *Riccardo*, 2016 WL 7106048 at *7, thereby implying that "they did not intend to prohibit [the tolling] doctrine's applicability." *Livingston*, 2020 WL 1172642 at *5.

After a careful review of the relevant authority, the Court is persuaded by the reasoning espoused in *Riccardo* and *Livingston*, and it joins that line of cases in concluding that the filing of an EEOC charge tolls the one-year statute of limitations for NYSHRL claims against school districts. It would make little sense, in this Court's view, to treat such filings differently just because the defendant in the matter is a school district, particularly where (1) the filing of an administrative charge with the EEOC is a prerequisite to bringing an ADA or ADEA claim in federal court, (2) an EEOC complaint is deemed filed with the DHR, which would otherwise toll the three-year statute of limitations under the human rights law, and (3) such federal claims, like those here, often involve identical facts to claims under the NYSHRL. *See Riccardo*, 2016 WL 7106048 at *7 (explaining how "[c]laims against school districts and their officers under the NYSHRL and NYCHRL, like other claims under the human rights laws, may be filed with the [DHR]" and "EEOC complaints are deemed filed with the [DHR] and toll the three-year statute of limitations," such that "[t]here [was] no apparent reason to treat such filings differently under the one-year statute of limitations that applies to claims against school districts and their officers under the human rights laws").[13]

With this legal framework in mind, the Court turns to the case at hand. Plaintiff commenced this action on October 30, 2018, meaning that, without tolling, any claims of discrimination, retaliation, or a hostile work environment arising out of conduct that occurred prior to October 30, 2017 would have been time-barred. (ECF No. 1.) Plaintiff, however, filed his administrative charge

---

[13] *Cf. Duran v. Jamaica Hosp.*, 216 F. Supp. 2d 63, 68 (E.D.N.Y. 2002) (explaining that "[t]he rationale for refusing to toll the statute of limitations for a pendent state common law claim . . . is that a timely state law complaint could have been filed at the same time as the Title VII claim without the prerequisite that it go before an administrative body").

with the EEOC on February 5, 2018 and the EEOC issued its "right to sue" letter 191 days later, on

August 15, 2018, thereby tolling the statute of limitations during that period.  *See DeNigris v. N.Y.C.*

*Health and Hosp. Corp.*, 861 F. Supp. 2d 185, 192 (S.D.N.Y. 2012) (explaining that the statute of

limitations under the NYSHRL is tolled "for the period between the filing of an EEOC charge and

the issuance by the EEOC of a right-to-sue letter").  As Plaintiff proceeded to file his complaint 76

days after he received his "right to sue" letter, his NYSHRL claims that accrued on, or after, April

22, 2017—*i.e.*, 289 days prior to Plaintiff's filing of his administrative charge with the EEOC—now

fall within the limitations period.[14]  Conversely, any NYSHRL claim based on conduct occurring

prior to April 22, 2017, is time-barred.  Therefore, as to the NYSHRL claims falling outside of the

statute of limitations, the Court GRANTS Defendants' motion to dismiss, with prejudice.[15]

    *ii.    Merits*

    Plaintiff's NYSHRL claims can be swiftly disposed of on the merits.  It is well established

that claims for discrimination, retaliation, and a hostile work environment under the NYSHRL are

analyzed under the same legal framework as its federal counterparts.  *See Zabar*, 2020 WL 2423450

at *6 n.7 ("The standard for demonstrating a hostile work environment is the same under Title VII,

the ADA, the Rehabilitation Act, and the NYSHRL." (quoting *Leftridge*, 2020 WL 1503665 at

*11)); *Murtha*, 2019 WL 4450687 at *16 ("[T]he legal standards for discrimination claims under

---

[14]    The Court notes that the preceding analysis only pertains to the District and its officers.  Any NYSHRL claims against non-officers would only be subject to the NYSHRL's three-year statute of limitation and thus would be timely before the Court.  *See, e.g.*, *Guity*, 2017 WL 9485647 at *10 (explaining that "Plaintiff's NYSHRL claims against the District, the Board, Dr. Lloyd (District Superintendent) and Dickson (District Assistant Superintendent of Human Resources) are subject to the one year statute of limitations, since these individuals are considered 'officers'" within the meaning of Section 3813, while "claims against Dr. Simmons, who was the District's high school principal, are governed by the longer three-year limitations period").  Nevertheless, although Plaintiff has alleged enough facts that likely would allow for individualized assessments regarding what statute of limitations periods apply to which Defendants, the Court need not make that legal determination at this time.  As will be explained, Plaintiff's NYSHRL claims fail on the merits as against the District and therefore necessarily fail against the individual defendants.

[15]    Considering its conclusions regarding the merits of Plaintiff's state-law claims as alleged, the Court does not reach Defendants' Notice of Claim arguments at this time.

the ADA and the NYSHRL are essentially the same.'"); *Dipinto v. Westchester Cty.*, No. 18-CV-793 (KMK), 2019 WL 4142493 at *8 (S.D.N.Y. Aug. 30, 2019) ("The NYSHRL contains a similar provision against retaliation . . . and is governed by the same standard."); *Lebowitz v. N.Y.C. Dep't of Educ.*, 407 F. Supp. 3d 158, 176-77 (E.D.N.Y. 2017) (standards for retaliation under ADEA and NYSHRL are the same); *Rupert v. City of Rochester, Dep't of Envtl. Servs.*, 701 F. Supp. 2d 430, 438 (W.D.N.Y. 2010) (explaining that discrimination "claims under the NYSHRL are analyzed under the same legal framework as ADEA claims"); *Preuss v. Kolmar Labs., Inc.*, 970 F. Supp. 2d 171, 184 n.14 (S.D.N.Y. 2013) ("ADEA and NYSHRL claims for hostile work environment are analyzed under the same standards, and therefore I will not address Plaintiffs' NYSHRL claims separately.").  As a result, the Court's analysis regarding Plaintiff's federal claims applies with equal force to his NYSHRL claims.  And because Plaintiff's ADA, ADEA, and RA claims were deficient, dismissal of Plaintiff's NYSHRL claims against the District is plainly warranted.

In contrast to the ADEA, ADA, and RA, however, the NYSHRL allows for "[i]ndividuals who are not a plaintiff's employer to be held liable for aiding and abetting discriminatory or retaliatory conduct."  *Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 451 (S.D.N.Y. 2018); *see also* N.Y. Exec. Law § 296(6) ("It shall be unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so.").  But, because Plaintiff has failed to establish violations of the ADA, ADEA, or RA—and, therefore, the NYSHRL—against the District, there is no basis on the face of the AC to impute aider and abettor liability on to any of the named individuals.  *See Johnson v. City of New York*, 18-CV-9600 (AJN), 2020 WL 2036708, at *5 (S.D.N.Y. Apr. 28, 2020) (dismissing NYSHRL aiding and abetting claim because plaintiff failed to plead an underlying violation of the statutes).

To the extent the Court may be able to consider claims that are not otherwise time-barred under the ADEA, ADA, and NYSHRL against certain individual Defendants, they similarly fail. As Plaintiff essentially concedes, the conduct attributable to the District in the time-barred period relates to Plaintiff's hostile work environment claim (*see* Pl. Opp. 16), which this Court already concluded cannot survive Defendants' motion to dismiss. And even if the Court did consider conduct not expressly encompassed by Plaintiff's hostile work environment claims (*see id.*)—for example, his contention that Augusta falsely claimed that Plaintiff broke locks on the lockers or that Augusta prevented him from conducting weight training on school ground (AC ¶¶ 27-28)—those allegations fail to raise even a minimal inference of discrimination on the basis of age or disability.

In conclusion, the Court GRANTS Defendants' motion to dismiss Plaintiff's timely NYSHRL claims as against both the District and the individual Defendants, without prejudice.

## B. State Common Law Claims

### i. Defamation

According to the AC, Plaintiff's defamation claim is premised on "false and defamatory allegations" related to the accusations that he "abus[ed] students as a football coach and teacher on or about December 5, 2017 and January 12, 2018." (AC ¶ 61.) Specifically, Plaintiff points to the allegations from the DASA complaints that he called a student "Irish eyes" and "punched a football player's testicles." (*Id.*) Plaintiff's defamation claim must fail as deficiently pleaded.

To state a claim for defamation under New York law, a plaintiff must allege "(1) a false statement about the plaintiff; (2) published to a third party without authorization or privilege; (3) through fault amounting to at least negligence on [the] part of the publisher; (4) that either constitutes defamation per se or caused 'special damages.'" *Gargiulo v. Forster & Garbus Esqs.*, 651 F. Supp. 2d 188, 192 (S.D.N.Y. 2009) (citing *Dillon v. City of New York*, 261 A.D.2d 34, 38

(1st Dep't 1999)).  A plaintiff must plead the defamatory statements with some peculiarity.  N.Y. C.P.L.R. 3016(a) ("In an action for libel or slander, *the particular words complained of shall be set forth in the complaint*, but their application to the plaintiff may be stated generally." (emphasis added)).  This requires a plaintiff to "identify the allegedly defamatory statements, the person who made the statements, the time when the statements were made, and the third parties to whom the statements were published."  *Alvarado v. Mount Pleasant Cottage Sch. Dist.*, 404 F. Supp. 3d 763, 790 (S.D.N.Y. 2019) (quoting *Neal v. Asta Funding, Inc.*, 13 CV 2176 (VB), 2014 WL 3887760, at *3 (S.D.N.Y. June 17, 2014)).

As an initial matter, Plaintiff fails to plead the allegedly defamatory statements that form the basis of his claim or how those statements would be "reasonably susceptible" to a defamation claim. *See Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 177 (2d Cir. 2000) (defamatory statement must "expose[ ] an individual 'to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or . . . induce[s] an evil opinion of one in the minds of right-thinking persons, and . . . deprives one of . . . confidence and friendly intercourse in society.'").  While the defamatory statements appear to be the allegedly false accusations under DASA, the only alleged "statement" from that context is that *Plaintiff* called a student "Irish eyes." (AC ¶¶ 39, 61.)  Regardless, Plaintiff also has not established to which "third parties" the allegedly defamatory statements were published.  Indeed, all the Court can discern from the AC is that these allegations were communicated to Plaintiff.  Given these pleading deficiencies, the Court GRANTS Defendants' motion to dismiss Plaintiff's defamation claims, without prejudice.

### ii.    Tortious Interference with Contract

In his complaint, Plaintiff contends that Defendants "have tortiously interfered with Plaintiff's contract as both a teacher and a football coach."  (AC ¶ 63.)  Under New York law, a

plaintiff must plead the following elements to establish a tortious interference claim: (1) the existence of a valid contract, (2) defendant's procurement of a third party's breach of that contract without justification, and (3) damages to plaintiff resulting therefrom. *Am. Para Prof'l Sys., Inc. v. LabOne, Inc.*, 175 F. Supp. 2d 450, 457 (E.D.N.Y. 2001) (citing *Lama Holding Co. v. Smith Barney, Inc.*, 88 N.Y.2d 413, 424 (1996)). Here, Plaintiff's tortious interference with contract claim is clearly deficient. Plaintiff has failed to allege, among other things, (1) the terms of the alleged contract, (2) that the contract was between him and a *third party,* (3) how the third party breached the contract, or (4) that the Defendants acted in an intentional manner, and without justification, to procure any alleged breach. Given these staggering deficiencies, the Court GRANTS Defendants' motion to dismiss Plaintiff's tortious interference with contract claim, without prejudice.

### III.    Leave to Amend

"Although Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend 'shall be freely given when justice so requires,' it is within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citations omitted). When exercising this discretion, courts consider many factors, including undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility. *Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Here, the Court will grant Plaintiff leave to file a second amended complaint as to those claims not dismissed with prejudice. Specifically, notwithstanding the above explained deficiencies, Plaintiff could potentially plead facts that cure his complaint's various defects. Although Plaintiff certainly has high hurdles to overcome, leave to amend in this case would not necessarily be futile

at this juncture.  Furthermore, as this case is still in its infancy, there would be minimal prejudice to Defendants in permitting Plaintiff to make one final amendment.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's Amended Complaint is GRANTED.  The Court, however, grants Plaintiff leave to file a second amended complaint regarding those claims not dismissed with prejudice.  If he chooses to do so, Plaintiff has until July 28, 2020 to file his second amended complaint.  Defendants are then directed to answer or otherwise respond by August 28, 2020.  Failure to file an amended complaint within the time allowed, and without good cause, will result in the dismissal of Plaintiff's claims with prejudice.

The Clerk of Court is directed to terminate the motion at ECF No. 36.

Dated:   May 31, 2020
         White Plains, New York

SO ORDERED.

_____
NELSON S. ROMÁN
United States District Judge

37