USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___3/15/2023___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

MARSILIO LANGELLA,

                       Plaintiff,

    -against-

MAHOPAC CENTRAL SCHOOL DISTRICT;
ANTHONY DICARLO, SUPERINTENDENT OF
SCHOOLS; DENNIS CREEDON, FORMER
SUPERINTENDENT OF SCHOOLS; JOHN
AUGUSTA, ATHLETIC DIRECTOR/FORMER
INTERIM PRINCIPAL; RONALD CLAMSER,
FORMER HUMAN RESOURCES
DIRECTOR/ASSISTANT SUPERINTENDENT;
MICHAEL SCLAFANI, FORMER BOARD
PRESIDENT; BRIAN MAHONEY, FORMER
BOARD VICE PRESIDENT,

                       Defendants.
_____

18-cv-10023 (NSR)

ORDER & OPINION

NELSON S. ROMÁN, United States District Judge:

      Plaintiff Marsilio Langella ("Plaintiff" or "Langella") brings this action against

Defendants Mahopac Central School District ("Mahopac" or the "District"), Anthony DiCarlo,

Superintendent of Schools for the District ("DiCarlo"), Dennis Creedon, Former Superintendent

of Schools for the District ("Creedon"), John Augusta, Former Athletic Director and Former

Interim Principal of Mahopac High School ("Augusta"), Ronald Clamser, Former

Superintendent/Human Resources Director for the District ("Clamser"), Michael Sclafani, Former

Board President for the District ("Sclafani"), and Brian Mahoney, Former Board Vice President

for the District ("Mahoney") (collectively, "Defendants"). (Third Amended Complaint ("TAC"),

ECF No. 65.) Plaintiff asserts claims under the Age Discrimination in Employment Act

("ADEA"), 29 U.S.C. § 621 *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C.

§12101 *et seq.*, Section 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794, and the

New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*, alleging discriminatory and retaliatory conduct stemming from his age and his disability. (*Id.*) Plaintiff also asserts state common law claims of defamation. (*Id.*)

Presently before the Court is Defendants' motion to dismiss Plaintiff's Third Amended Complaint. (ECF No. 68.) For the following reasons, Defendants' motion is GRANTED.

## BACKGROUND

The facts alleged in the TAC are substantially similar to the facts alleged in the Second Amended Complaint ("SAC") (ECF No. 44). The Court assumes familiarity with the allegations set forth in the SAC, as outlined in this Court's Opinion & Order dated January 5, 2022 ("Second Opinion & Order") (ECF No. 63), in which this Court dismissed Plaintiff's claims.

Plaintiff included the following new allegations in the TAC:

- Plaintiff's unilateral deafness "significantly impair[s] his major life activities," specifically his "ability to determine where specific sounds come from" and his "awareness of the tone of his voice" and "fluctuations" therein. (TAC ¶ 16.) Plaintiff identifies Defendant Mahoney as the individual who perceived, on account of Plaintiff's loud voice, that Plaintiff "could not represent" the District and "would be thought [of] as a thug coach." (*Id.*)

- Defendants Sclafani and Creedon "tried to dissuade" Plaintiff from re-applying for the head coaching position by implementing "Coaching Policy 7421." (*Id.* ¶ 32.) Although it is unclear what "Coaching Policy 7421" refers to, the policy only remained in effect for the 2016 season. (*Id.*) During his time as head coach, Defendants Sclafani and Creedon also "threaten[ed]" to conduct bi-weekly meetings with Plaintiff "to evaluate how he was doing." (*Id.*)

2

- Defendant Clamser intentionally waited until April 2017 to notify Plaintiff that the District would not reappoint Plaintiff to his head coaching position. (*Id.* ¶ 40.) Because he received notice in April 2017, Plaintiff was precluded from applying to coaching positions at other districts. (*Id.*)

- Plaintiff met with Principal Matt Lawrence on October 30, 2017 to disclose that he was experiencing anxiety as a result of students "egging" his house. (*Id.* ¶ 46.)

- In October 2019, the District received an anonymous letter from a parent, which included a letter from Principal Lawrence dated March 29, 2018. (*Id.* ¶¶ 56–57.) Principal Lawrence's letter substantiated three specific allegations against Plaintiff, all of which involved Plaintiff making crude or threatening remarks towards his football team. (*Id.* ¶ 57)

## LEGAL STANDARD

Under Rule 12(b)(6), courts must assess whether a complaint "contain[s] sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); accord *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). A court must accept all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but it is "'not bound to accept as true a legal conclusion couched as a factual allegation'" or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." *Id.* at 662. A claim is facially plausible when the facts pleaded allow a court to make "a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

## DISCUSSION

In his TAC, Plaintiff asserts federal claims of discrimination, retaliation, and hostile work environment. (TAC ¶¶ 65–71.) Plaintiff also asserts similar state law discrimination claims under the New York State Human Rights Law. N.Y. Exec. Law § 290 *et seq. (*TAC ¶¶ 72–77.) Lastly, Plaintiff alleges state law claims of defamation. (*Id.* ¶ 78–80.) A review of the SAC and TAC reveals that both pleadings are substantially the same, with only minor additions made to the TAC. The Court addresses any impact these minor changes have on the viability of Plaintiff's claims.[1]

### I.   Plaintiff's Federal Claims

Consistent with Plaintiff's SAC, the TAC pleads federal claims pursuant to the ADA, ADEA, and RA, including: (1) discrimination, (2) retaliation, and (3) hostile work environment. The Court addresses each in turn.

### A.  Discrimination Claims Pursuant to the ADA, RA, and ADEA

#### 1. ADA/RA Claims

As noted in this Court's previous opinions, "the standards under the [ADA and RA] are generally the same." *Wright v. N.Y.S. Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016). Also, "where, as here, the subtle distinctions between the statutes are not implicated, courts 'treat claims under the two statutes identically.'" *Hill v. LaClair*, No. 9:20-CV-0441 (DNH/ATB), 2020 WL 2404771, at *7 (N.D.N.Y. May 11, 2020) (quoting *Wright*, 831 F.3d at 72); *accord Seitz v. New York State*, No. 2:18-CV-4149 (PKC) (LB), 2019 WL 4805257, at *12 (E.D.N.Y. Sept. 30, 2019) ("Claims of disability discrimination brought pursuant to Title I of the ADA and the Rehabilitation Act are analyzed under the same standards.").

---

[1] This Court reiterates that all claims for discrimination, retaliation, or hostile work environment under the ADEA and ADA accrued prior to April 11, 2017 are time-barred.  (Second Opinion & Order at 8 n.1.)

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To sufficiently plead a claim for employment discrimination under the ADA, a plaintiff must demonstrate that (1) his or her employer is subject to the ADA; (2) he or she was disabled within the meaning of the ADA; (3) he or she was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) he or she suffered an adverse employment action because of the disability. *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (quoting *Giordano v. City of New York*, 274 F.3d 740, 747 (2d Cir. 2001)). At the motion to dismiss stage, "a plaintiff need only give plausible support to a minimal inference of discriminatory motivation." *Dooley v. Jetblue Airways Corp.*, 636 Fed. Appx. 16, 19–21 (2d Cir. 2015) (citing *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015)). Similarly, under the RA, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . .." 29 U.S.C. § 794(a).

This Court previously dismissed Plaintiff's ADA and RA claims, reasoning that Plaintiff failed to plead a disability under the ADA. (Second Opinion & Order at 10.) Defendants contend in their current motion that Plaintiff has not cured this defect. The Court again agrees with Defendant.

Under the ADA, "[a] qualifying disability 'must limit a major life activity and the limitation must be substantial.'" *O'Hara v. Bd. of Coop. Educ. Servs., S. Westchester*, No. 18-CV-8502 (KMK), 2020 WL 1244474, at *12 (S.D.N.Y. Mar. 16, 2020) (quoting *Pugliese v. Verizon N.Y., Inc.*, No. 05-CV-4005, 2008 WL 2882092, at *10 (S.D.N.Y. July 9, 2008)). "In other words, the

ADA protects only a limited class of persons—individuals who suffer from impairments significantly more severe than those encountered by ordinary people in everyday life." *Sussle v. Sirina Prot. Sys. Corp.*, 269 F. Supp. 2d 285, 300 (S.D.N.Y. 2003) (internal quotations and citations omitted).

To successfully plead a qualifying disability under the ADA, a plaintiff "must allege which major life activity or activities their impairment substantially affects." *Laface v. E. Suffolk BOCES*, No. 2:18-CV-1314 (ADS) (AKT), 2020 WL 2489774, at *10 (E.D.N.Y. May 18, 2020). "'Major life activities include: 'caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.'" *Andino v. Fischer*, 698 F. Supp. 2d 362, 378 (S.D.N.Y. 2010) (quoting 42 U.S.C. § 12102(2)(A)). It is "well-established that an impairment does not significantly restrict a major life activity if it results only in mild limitations." *Collins v. Giving Back Fund*, No. 18-CV-8812 (CM), 2019 WL 3564578, at *13 (S.D.N.Y. Aug. 6, 2019) (quoting *Whalley v. Reliance Grp. Holdings, Inc*., No. 97-CV-4018(VM), 2001 WL 55726, at *4 (S.D.N.Y. Jan. 22, 2001)). Moreover, it is not enough for a plaintiff to only "allude to her [or his] impairments in her [or his] pleadings; she [or he] must plead how those impairments significantly impacted her [or his] major life activities." *Id*.

In the TAC, as in the SAC and Amended Complaint, Plaintiff points to two medical issues at the heart of his ADA and RA claims: (1) his hearing impairment (deafness in his right ear) and tinnitus, and (2) his hypertension and heart disease. (TAC ¶¶ 16–17.) Yet Plaintiff has again failed to plausibly allege that either condition constitutes a disability within the meaning of the ADA. Plaintiff does not allege how, if at all, his hypertension or heart disease impacts a major life activity. *Williams*, 2020 WL 906386 at *5 (holding that allegations that plaintiff suffered from

6

severe hypertension, without any explanation of how it substantially limited one or more major life activities, did not satisfy the ADA's definition of disability). Plaintiff adds only that "stress, high blood pressure, and aggravated hypertension caused by [] false DASA allegations . . . aggravated his disability and affected his major life activities, and eventually caused him to prematurely retire from the District in June 2021." (TAC ¶ 50.) Like the SAC, the TAC is devoid of any allegation indicating *how* Plaintiff's life activities are significantly restricted due to his hypertension and heart disease, especially where Plaintiff continued teaching chemistry and coaching football despite undergoing heart surgery in 2011 (TAC ¶¶ 18–19). *See Williams v. New York City Dep't of Educ.,* No. 18-CV-11621 (RA), 2020 WL 906386, at *5 (S.D.N.Y. Feb. 25, 2020) (dismissing ADA claim where plaintiff failed to explain how "severe hypertension" "substantially limit[ed] one or more major [of plaintiff's] life activities").

Plaintiff's claims related to his hearing impairment are similarly deficient. Plaintiff attempts to cure the defect in the SAC by alleging that "[t]hese impairments significantly impair his major life activities, such as the ability to determine where specific sounds come from, as well as awareness of the tone of his voice causing fluctuations in his tone of voice." (TAC ¶ 16.) Plaintiff further alleges that these impairments impact his ability to communicate one on one with parents. (*Id.*) The Second Circuit, however, has "been careful to distinguish impairments which merely *affect* major life activities from those that *substantially limit* those activities." *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 870 (2d Cir. 1998) (emphasis in original). The fact that Plaintiff has to speak at a higher volume to the displeasure of his coworkers, and potentially parents, does not render his condition a disability under the ADA. *Cf. Sotomayor v. Ricardo*, No. 3:17-CV-00845 (SRU), 2017 WL 2661621, at *4 (D. Conn. June 20, 2017) (dismissing ADA claim where plaintiff failed to identify any program or activity he was excluded from due to his hearing loss)

(citing *Ryan*, 135 F.3d at 870); *Pritchett v. Ellers*, 324 F. App'x 157, 159 (3d Cir. 2009) (explaining that a "raspy" voice does not substantially limit a person's "major life activity of speaking," in particular where "there is no evidence in the record" that plaintiff "was unable to articulate words" or that individuals could not "comprehend[ ]" plaintiff's speech). Plaintiff's own allegations show Plaintiff's unilateral deafness did not "exclude" him from teaching or coaching, *see Sotomayor*, 2017 WL 2661621, at *4, in particular because Plaintiff has suffered from the same health condition since 1994 and yet Plaintiff continued teaching chemistry and coaching football for nearly two decades—all while accumulating "many accolades." (TAC ¶¶ 16, 18–19.)

    Accordingly, Plaintiff's ADA and RA claims are dismissed with prejudice.

### 2. ADEA Claims

    Under the ADEA, it is "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). This protection covers "individuals who are at least 40 years of age." *Id.* § 631(a).

    To state an ADEA discrimination claim, a plaintiff must allege that (1) he or she was "within the protected age group," (2) he or she was "qualified for the position," (3) he or she "experienced adverse employment action," and (4) "such action occurred under circumstances giving rise to an inference of discrimination." *Green v. Town of E. Haven*, 952 F.3d 394, 403 (2d Cir. 2020) (quoting *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010)). On a motion to dismiss, a court "need determine only 'whether the allegations in the complaint give plausible support to the reduced prima facie requirements that arise . . . in the initial phase of a litigation.'" *Miller v. Dep't of Educ. of City of N.Y.*, No. 17-CV-594 (JPO), 2018 WL 1468703, at *2 (S.D.N.Y. Mar. 23, 2018) (quoting *Dressler v. City Sch. Dist. of N.Y.C.*, No. 15-CV-3696 (JPO),

2016 WL 4367967, at *3 (S.D.N.Y. Aug. 15, 2016)). In an ADEA action, a plaintiff must provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Luka v. Bard College*, 263 F. Supp. 3d 478, 484–85 (S.D.N.Y. 2017) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)).

As an initial matter, Plaintiff once again points to the relative youth of Plaintiff's replacement as head coach. (TAC ¶ 44.) This Court, in its previous two dismissals, already found this contention insufficient to establish discriminatory intent and remains persuaded that the age difference between DiMatteo and Plaintiff does not support an inference of discriminatory intent. (Second Opinion & Order at 14.) Moreover, this Court previously found Plaintiff's SAC allegations were "still insufficient to indicate discriminatory intent." (*Id.* at 15.)

To save his claim, Plaintiff now alleges that Coaching Policy 7421 was implemented in 2016 to dissuade him from re-applying for the head coaching position, and that certain defendants were "threatening" biweekly meetings with Plaintiff to evaluate his performance. (TAC ¶ 32.) Aside from the fact it is time-barred, *see supra* n. 1, this new allegation fails for the same reasons articulated in the SAC: Plaintiff does not articulate how this Court can infer discriminatory intent from an unspecified coaching policy, specifically where (1) the policy does not render head coaching more difficult for someone with hearing loss or hypertension; (2) it is unclear whether the policy would negatively impact the team's performance or was otherwise intended to do so; and (3) even assuming the policy negatively affected team performance, Plaintiff has not alleged the District weighed the on-field performance of a high school football team more heavily than the head coach's treatment of teenage student-athletes. Plaintiff also now alleges that a certain Defendant "purposely notified [him] of his non appointment to the football coaching position in late April 2017, which did not allow him to apply to other football head or assistant coaching

positions in other districts." (TAC ¶ 40.) Plaintiff, however, again fails to articulate how Defendant's late notification permits a plausible inference of discriminatory animus.

Accordingly, Plaintiff's ADEA claim is dismissed with prejudice.

## B. Retaliation Claims

As noted in this Court's previous opinion, retaliation claims under the ADEA and the ADA are analyzed under the same framework. *Smith v. N.Y.C. Dep't of Educ.*, No. 18-CV-8545 (PGG), 2019 WL 6307471, at *11 (S.D.N.Y. Nov. 25, 2019) (citing *Cerni v. J.P. Morgan Sec. LLC*, 208 F. Supp. 3d 533, 538 (S.D.N.Y. 2016); *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002); *Weixel v. Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 148 (2d Cir. 2002)). To establish a prima facie case of retaliation, a plaintiff must plead that "(1) the employee was engaged in an activity protected by [the applicable statute], (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action." *Furk v. Orange-Ulster BOCES*, No. 15-CV-6594 (NSR), 2016 WL 6560408, at *3 (S.D.N.Y. Nov. 2, 2016). At the pleading stage, the allegations of retaliation "need only give plausible support to the reduced prima facie requirements." *Littlejohn*, 795 F.3d at 316. In other words, "for a retaliation claim to survive . . . a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015). To plead causation, a plaintiff must allege "that his [or her] protected activity was the but-for cause of the adverse employment action." *Ninying v. N.Y.C. Fire Dep't*, 807 Fed. Appx. 112, 115 (2d Cir. 2020); *Bailey v. Mount Vernon City Sch. Dist.*, No. 17-CV-9973 (KMK), 2020 WL 1528481, at *12 (S.D.N.Y. Mar. 30, 2020) (explaining that "recent Second Circuit decisions . . . conclusively

establish [] that 'but-for' causation is required for each of Plaintiff's claims," including retaliation). However, "where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001).

This Court previously held that Plaintiff's retaliation claims were inadequately pleaded because the connection between the protected activity and adverse employment action was deeply attenuated and "courts in this Circuit generally hold that a gap longer than two months severs the inferred causal relationship" is needed to establish retaliation. (Second Opinion & Order at 17) (citing *Graham v. Macy's, Inc.*, No. 14-CV-3192 (PAE), 2016 WL 354897, at *9 (S.D.N.Y. Jan. 28, 2016) and *Knox v. Town of Southeast*, No. 11-CV-8763(ER), 2014 WL 1285654, at *11 (S.D.N.Y. Mar. 31, 2014) ("Indeed, many of the decisions in this Circuit that have addressed the issue have held that a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation.")).

The Court expressed in the Second Opinion & Order that Plaintiff failed to allege that that his protected activity was the but-for cause of allegedly retaliatory acts, including Principal Lawrence's dissemination of a letter containing students' allegedly false DASA accusations against Plaintiff. (Second Opinion & Order at 16–19.) Although Plaintiff adds substantial detail to the contents of those accusations (TAC ¶¶ 56–57)—presumably to bolster his defamation claims— these new allegations in no way alter the Court's reasoning clearly articulated in the Second Opinion & Order. (Second Opinion & Order at 16–19.) Regardless of the contents of the DASA accusations, the fact remains that "months prior to the filing of the EEOC charge, Plaintiff had been subjected to the very false accusations that would eventually be detailed in the letter

11

disseminated to parents after the EEOC charge." (*Id.* at 19.)  Accordingly, the Court concludes Plaintiff has offered no new allegations to support his retaliation claim.

Plaintiff's claims for retaliation under the ADEA and ADA are dismissed with prejudice.

### C.  Hostile Work Environment Claims

In order to prevail on a hostile work environment claim, a plaintiff must show that "the harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)); *see also Oncale v. Sundowner Offshore Serv., Inc.*, 523 U.S. 75, 78 (1998) (stating that a hostile work environment is created "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment"). "As a general rule, incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Alfano*, 294 F.3d at 374 (quoting *Perry*, 115 F.3d at 149).

The Court previously dismissed Plaintiff's hostile work environment claim because he failed to allege that Defendants' conduct was sufficiently severe and pervasive. Plaintiff adds no allegations to the TAC that would bolster his hostile work environment claim.

Accordingly, Plaintiff has failed to plausibly allege any hostile workplace claim, and the Court dismisses such claims with prejudice.

### II.  State Law Claims

Many of Plaintiff's additional allegations were made with concern to his state law claims, particularly for defamation. (TAC ¶¶ 46–48, 56–59.) The Court need not address these additional allegations because the Court declines to exercise supplemental jurisdiction and dismisses without

prejudice any state-law claims that Plaintiff asserts.  A federal district court may decline to exercise supplemental jurisdiction over state-law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction...." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (footnote omitted). Having dismissed the federal claims over which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction over any state-law claims Plaintiff asserts. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

Because Plaintiff's federal claims have been dismissed with prejudice, this Court declines to exercise pendant jurisdiction over Plaintiff's state law claims.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss the Third Amended Complaint is GRANTED. The Court dismisses Plaintiff's federal claims under the ADA, ADEA, and RA with prejudice. The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims and dismisses without prejudice Plaintiff's remaining state law claims.

The Clerk of Court is directed to terminate the motion at ECF No. 68 and to close the case.

SO ORDERED.

Dated: March 15, 2023
White Plains, New York

_____

NELSON S. ROMÁN
United States District Judge